DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Andrew L. Brown, appeals the decision of the Summit County Court of Common Pleas, which found him guilty of having weapons while under disability and felonious assault. This Court affirms.
 I. {¶ 2} On February 21, 2005, appellant called the police because he believed there was an intruder in his home. When the police arrived, they searched appellant's home, but found no one other than appellant and Ms. Braziel. The police seized a loaded .22 rifle that appellant had on the couch with him. During their search of the premises, the police found ammunition for the rifle, a knife, and drug paraphernalia which the appellant admitted belonged to him. The police also questioned Queenie Braziel who lived with appellant. Ms. Braziel told the police that appellant had pointed a knife and a gun at her prior to the police arriving at the house. Appellant was arrested and the Summit County Grand Jury indicted him on one count of having weapons while under disability, one count of possession of cocaine, one count of illegal use or possession of drug paraphernalia, one count of domestic violence, and one count of aggravated menacing.
 {¶ 3} On April 7, 2005, appellant gave Ms. Braziel money and asked her to purchase crack cocaine for him. Ms. Braziel purchased the crack cocaine and returned to appellant's home where the two were going to smoke it. When appellant attempted to smoke the crack cocaine, he realized it was fake. Appellant grabbed a pen knife and stabbed Ms. Braziel once in the neck and once in the chest. The police were called and after an investigation was conducted, appellant was arrested and a supplemental indictment was filed charging appellant with one count of attempted murder, one count of felonious assault, one count of violating a protection order, one count of intimidation of a crime victim or witness, and one count of domestic violence.
 {¶ 4} The matter proceeded to a jury trial at the close of which appellant was found guilty of having weapons while under disability, possession of drug paraphernalia, and felonious assault. Appellant was sentenced to a term of imprisonment of one year for the weapons under disability charge, a term of three years imprisonment for the felonious assault charge, and thirty days of local incarceration for the possession of drug paraphernalia charge, and ordered to serve the sentences concurrently. The trial court then suspended the sentence on the condition that appellant complete two years of community control.
 {¶ 5} Appellant timely appealed his convictions of having weapons while under disability and felonious assault, setting forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"THE COURT ERRED IN NOT GRANTING [APPELLANT'S] MOTION FOR ACQUITTAL, AFTER THE CLOSE OF THE STATE'S CASE AND AFTER THE CLOSE OF ALL EVIDENCE, AS THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE AS TO ALL ELEMENTS OF THE OFFENSE OF HAVING WEAPONS WHILE UNDER DISABILITY AND THE CHARGE SHOULD HAVE BEEN DISMISSED."
 {¶ 6} In his first assignment of error, appellant argues that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29. Specifically, appellant contends that the evidence presented by the State was insufficient to prove that he was either a drug dependent person or a person in danger of becoming a drug dependent person as required by R.C.2923.13(A)(4) and defined in R.C. 3719.011(B)/(C). This Court affirms.
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a trial court's ruling on a Crim.R. 29(A) motion for acquittal, this Court construes the evidence in a light most favorable to the State. State v. Wolfe (1988),51 Ohio App.3d 215, 216.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752.
 {¶ 8} The test for sufficiency requires a determination of whether the State has met its burden of production at trial.State v. Walker (Dec. 12, 2001), 9th Dist. No. 20559; See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 390. (Cook, J., concurring)
 {¶ 9} Appellant was charged with one count of having weapons while under disability in violation of R.C. 2923.13(A)(4) which states in relevant part:
"Unless relieved from disability as provided in section 2923.14
of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is drug dependent, in danger of drug dependence, or a chronic alcoholic."
 {¶ 10} R.C. 3719.011(B) and (C) define "drug dependent person" and a "person in danger of becoming a drug dependent person" as:
"`Drug dependent person' means any person who, by reason of the use of any drug of abuse, is physically, psychologically, or physically and psychologically dependent upon the use of such drug, to the detriment of the person's health or welfare."
"`Person in danger of becoming a drug dependent person' means any person who, by reason of the person's habitual or incontinent use of any drug of abuse, is in imminent danger of becoming a drug dependent person."
Although, not assigned as error, appellant argues that this Court should hold that expert testimony is required to prove that a person is a "drug dependent person" or a "person in danger of becoming a drug dependent person. However, just as the Supreme Court of Ohio in State v. Tomlin (1992), 63 Ohio St.3d 724, held that expert testimony is not required to demonstrate that someone is a "chronic alcoholic," this Court finds that expert testimony is not required to prove that someone is a "drug dependent person" or a "person in danger of becoming a drug dependent person."
The State called Ms. Queenie Braziel as a witness. Ms. Braziel testified that she began living with appellant in February 2005 because she did not have anywhere to live. Ms. Braziel testified that she moved in with appellant because she could do drugs, mainly crack cocaine, with him in his home. Ms. Braziel stated that she has known appellant to be a drug user for five or six years, specifically crack cocaine and OxyContin. Ms. Braziel stated that when she came out of the shower on February 21, 2005, appellant drew a shotgun on her and accused her of hiding a man in his basement. Ms. Braziel stated that appellant called the police. When the police arrived, they searched appellant's home and found guns and crack cocaine, but no intruder. Appellant was arrested. Ms. Braziel testified that after the police arrested appellant on February 21, 2005, she went to her sister's house, but eventually she moved back into appellant's home.
 {¶ 11} Officer Daniel Engelhart of the Akron Police Department also testified on behalf of the State. Officer Engelhart testified that he was dispatched to appellant's home on a domestic call on February 21, 2005. Officer Engelhart testified that when he and his partner arrived at appellant's residence, Ms. Braziel let them in through the back door. Officer Engelhart stated that appellant was seated on a couch in the living room when they arrived. Officer Engelhart testified that, after checking the house for an intruder, he noticed that appellant had a .22 rifle behind him on the couch. Officer Engelhart stated that he took possession of the rifle and removed a live round from it. Officer Engelhart testified that appellant was very excited and insisted that there was someone in the house even after he and his partner had searched the house and property and found no signs of anyone other than appellant and Ms. Braziel at the residence. Officer Engelhart further testified that when he questioned appellant about his drug use, appellant stated that he had smoked crack for four to five years and that he had smoked it five minutes before calling the police that night.
 {¶ 12} Based upon the foregoing, and viewing the evidence presented in the light most favorable to the prosecution, this Court cannot find that the evidence was insufficient to convict appellant of having weapons while under disability. SeeThompkins, 78 Ohio St.3d at 386. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR FELONIOUS ASSAULT, AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED."
 {¶ 13} In his second assignment of error, appellant argues that his conviction for felonious assault was based on insufficient evidence and against the manifest weight of the evidence. This Court disagrees.
 {¶ 14} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 15} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 16} Appellant was convicted of felonious assault, pursuant to R.C. 2903.11(A)(1)/(2), which provides that "[n]o person shall knowingly [c]ause serious physical harm to another or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 17} The victim, Queenie Braziel, was called by the State as a witness. Ms. Braziel stated that she had known appellant all of her life. Ms. Braziel testified that on April 7, 2005, appellant gave her money and asked her to go get him a rock of crack cocaine. Ms. Braziel stated that she got the rock of crack cocaine and brought it back to appellant's house, cut it in half, and put it on appellant's crack pipe. Ms. Braziel testified that when appellant attempted to smoke the crack cocaine, he realized it was fake and threatened to kill her. Specifically, Ms. Braziel stated that appellant told her that he was going to cut her throat. Ms. Braziel testified that she and appellant were in a bedroom when he had her help him pull a dresser in front of the doorway. Then, according to Ms. Braziel's testimony, appellant stabbed her in the neck with a folding knife with a stiletto-like blade. Ms. Braziel testified that, after stabbing her in the neck, appellant appeared to have a change of heart and offered to take her to the hospital. Ms. Braziel further testified that while she was walking out of the house to get in the car, appellant stabbed her a second time under her breast bone. Ms. Braziel stated that as a result of the stabbings, she was hospitalized and had to have multiple surgeries and is expected to require more surgeries in the future.
 {¶ 18} Guy Randall, a firefighter and paramedic for the City of Akron also testified on behalf of the State. Randall testified that he responded as a paramedic to a call at the intersection of 7th Avenue and Kelly Avenue on April 7, 2005. Randall stated that the victim was Queenie Braziel. Randall testified that Ms. Braziel had one wound on her neck and one on her chest that appeared to be puncture wounds. Randall explained that a puncture wound indicates penetrating trauma and that the extent of the damage cannot be determined from the outward appearance of the wound. Randall testified that Ms. Braziel complained of shortness of breath, difficulty swallowing, and some dizziness. Randall further testified that he treated Ms. Braziel en route to the hospital to prevent her lung from collapsing. On cross-examination, Randall testified that the wounds he observed on Ms. Braziel's body looked like knife wounds.
 {¶ 19} The State also called Officer Jason Bailey of the Akron Police Department as a witness. Officer Bailey testified that he and his partner, Officer Scott Armstrong, were called to respond to a stabbing on April 7, 2005. Officer Bailey stated that when he and his partner arrived on the scene, Ms. Braziel was lying back against Kimberly Gulley with a towel around her neck. Officer Bailey testified that they confirmed that EMS was on its way. Officer Bailey further stated that after questioning Kimberly Gulley and others in the area, he and his partner went to a house they believed belonged to appellant. Officer Bailey stated that they checked around the outside of the house for a blood trail, checked the doors to see if they were secured, and looked in the windows for any evidence of the crime scene. Officer Bailey testified that no one was at appellant's residence while he and his partner were there. Officer Bailey stated that they informed the detectives of what they found at the residence.
 {¶ 20} Sergeant Ray Youngkin of the Akron Police Department also testified on behalf of the State. Sgt. Youngkin testified that he was unable to speak with Ms. Braziel until two or three days after the incident on April 7, 2005, because she required surgery and had a tracheotomy and could not speak. Sgt. Youngkin stated that he spoke with Ms. Braziel at the hospital and on April 19, 2005. Sgt. Youngkin testified that he took Ms. Braziel to the crime scene unit so that photographs of her injuries could be taken.
 {¶ 21} Sgt. Youngkin testified that he also interviewed appellant regarding what happened on April 7, 2005. Sgt. Youngkin stated that appellant told him that he sent Ms. Braziel out to buy crack and that when she came back he discovered the crack was "junk" and they began arguing. Sgt. Youngkin testified that appellant told him that he gave her a little prick in the neck. Sgt. Youngkin stated that appellant told him that he was protecting himself, but never explained to Sgt. Youngkin how he was threatened by Ms. Braziel and never mentioned a physical altercation between him and Ms. Braziel.
 {¶ 22} The appellant testified on his own behalf at trial. Appellant testified that on April 7, 2005, he took Ms. Braziel to buy some crack cocaine. Appellant stated that after Ms. Braziel bought the crack, the two went back to his house to smoke it. Appellant testified that when he tried the crack cocaine he knew it was not real. Appellant admitted that he was upset when he found out the crack cocaine was not real. Appellant stated that he picked up a pen knife from his dresser and the two struggled and Ms. Braziel got "pricked" with the knife. Appellant declared that the only wound he inflicted upon Ms. Braziel was the "prick" on her neck. Appellant testified that after the incident, he offered to take Ms. Braziel to the hospital, but on their way out to his truck, she started walking down the sidewalk. Appellant stated that Ms. Braziel must have sustained the other injuries after she left his house that evening. Appellant denied knowingly stabbing Ms. Braziel or intending to kill her. Appellant also denied preventing Ms. Braziel from leaving the bedroom. In addition, appellant denied using any drugs on April 7, 2005.
 {¶ 23} After reviewing the record in its entirety, this Court cannot conclude that appellant's conviction of felonious assault was against the manifest weight of the evidence. Although conflicting testimony was presented, this Court refuses to overturn the verdict because the jury chose to believe the testimony of the State's witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Accordingly, having found that appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Appellant's second assignment of error is overruled.
 III. {¶ 24} Appellant's assignments of error are overruled. The decision of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Moore, J. Boyle, J. concur.